IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| RUBEN ROMERO; dba R & R | § | CASE NO: 04-71111 |
| CONSTRUCTION & DESIGNS | § | |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| SALVADOR DELGADO, *et al* | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 04-7025 |
| | § | |
| ELSA STATE BANK & TRUST CO, *et al* | § | |
|     Defendant(s) | § | |

## **MEMORANDUM OPINION**

On July 26, 2004, Salvador Delgado and Elizabeth Mendez ("Plaintiffs") filed a civil suit against Ruben Romero d/b/a/ R&R Construction ("Romero") and Elsa State Bank ("ESB") in the 93rd Judicial District Court of Hidalgo County, Texas (collectively "Defendants"). The suit was based on a contract executed between Plaintiffs and Romero for the construction of a house. ESB was to provide financing for the construction. Plaintiffs' claims against Romero included breach of contract, misrepresentation and fraud, liability under the Texas Theft Liability Act, unjust enrichment and negligence. The claims as to ESB included misrepresentation and fraud and false, misleading or deceptive acts under the Texas Deceptive Trade Practices Act. ESB answered with a cross-claim against Romero for contribution according to the percentage of responsibility attributable to him.

On November 4, 2004, Romero filed a chapter 7 bankruptcy petition. The state court proceeding was removed to this Court on December 22, 2004. This proceeding was abated during mediation. On May 16, 2005, the parties entered into a settlement agreement. Under the terms of the settlement, Romero was to "remedy any and all defects in Plaintiffs' home and

1

perform any required construction and/or reconstruction work to complete the construction of the Plaintiffs' home." (docket no. 32, exh. A).

On July 18, 2005, this Court entered an order dismissing the adversary proceeding and enforcing the settlement agreement. Romero was ordered to commence construction in compliance with the settlement agreement not later than noon on August 14, 2005.

On October 11, 2005, Romero filed a motion for the Court's assistance in enforcing the settlement. In his motion Romero asserted he had complied with the settlement by repairing the roof, tearing out ceramic tiles and replacing a patio. Disputes, however, existed between Romero and Plaintiffs involving painting the home and interior work.

On November 10, 2005, Plaintiffs filed a motion to enforce the settlement alleging Romero had been hindering, delaying and prolonging the construction activities on Plaintiffs' home. Plaintiffs requested the Court find Romero in breach of the settlement agreement. A hearing was held on November 14, 2005. The Court issued an order resolving several specific issues raised during the November 14, 2005 hearing. At the hearing, the parties were instructed to provide a complete punch list of problems with the home. Plaintiffs provided what they referred to as a complete list of everything needing repair. Romero disagreed with the list. The settlement agreement approved by the Court on May 16, 2005, provided a remedy for such disputes. The agreement stated:

> If Plaintiffs find part or all of Romero's work to be unworkmanlike or defective, Plaintiffs will contact Attorney Leo Salzman (formerly the mediator in this case) and Mr. Salzman will obtain an independent contractor of his choosing, to examine the workmanship of the issues raise by Plaintiffs. If the independent contractor finds that Plaintiffs' claims lack merit, Plaintiffs will be charged with the costs of having the independent contractor inspect Plaintiffs' home. If the independent contractor finds that the work performed by Romero is unsatisfactory, defective or incomplete, Romero will pay the independent contractor to remedy the issues identified by Plaintiffs.

Pl. Mo. to Enforce Settlement p.3. Romero asserted some of the items on the punch list were either not in need of repair or were not included in the scope of the original contract. The Court ordered that the disputed items regarding proper workmanship were to be submitted to Mr. Salzman. Issues regarding whether the items were included in the scope of the contract were to be determined by the Court at a future date.

The Court set a hearing for November 30, 2005. At the hearing, the parties submitted exhibits and the Court heard testimony regarding the scope of the contract. The Court made findings as to the scope of the contract on the record and issued a detailed order, (the "November Order"), identifying what items were to be submitted to Mr. Salzman for a determination construction defects (docket no. 44). The November Order explicitly states which items were to be submitted to Mr. Salzman pursuant to the parties' settlement agreement and the stipulations of the parties, and which items were to be submitted to Mr. Salzman based on the Court's determination that the items were included within the parties' contract. The scope of the contract was determined at the hearing and incorporated into the November Order.

On March 2, 2006, Plaintiffs filed their second motion to enforce the settlement and motion for contempt alleging Romero had failed to comply with the terms of the November Order and settlement agreement.

On March 20, 2006, the bankruptcy case was dismissed. The following has occurred since dismissal of the bankruptcy case.

A hearing was held on April 17, 2006, during which the court attempted to facilitate compliance with the November Order and settlement agreement. Subsequent hearings were held on May 15, 2006, and June 1, 2006. At the hearings, the parties were attempting to continue

3

inspection of the home to determine compliance with the November Order and settlement agreement.

On June 6, 2006, Plaintiffs filed a motion for further inspection of the home. The motion stated that the independent contractor, who was chosen to conduct the inspection of Romero's work, had made recommendations and comments which had prompted a need for further investigation. These comments included:

1. "The entire house has a smell of mold and it is recommended that a mold specialist be contracted to make a finding."
2. "Unable to determine condition of lumber since it is covered by tile on the floor and plaster on the ceiling."
3. "Unable to determine damage to roof lumber since there is no safe access to the attic."
4. "Unable to enter the attic due in part to unsafe narrow opening that is hidden in one of the closets."
5. "Request a roofing contractor make a determination of "flat roof."

Pl's Mo. for Further Inspection of Home ¶ II. The motion for further inspection was granted (docket no. 51) on June 29, 2006. A hearing was held on July 17, 2006. The hearing was continued until August 22, 2006, on request of the parties. Because the independent contractor had been unable to complete the inspection of the home, the Plaintiffs filed an unopposed motion for continuance of the August 22, 2006 hearing. In the motion Plaintiffs asserted they had repeatedly requested from the current inspector and Mr. Salzman that another inspector be hired to examine the remaining work. The motion also included a letter from Mr. Salzman stating that based on the unexpected complexity of the issues involved, he was no longer willing to participate in obtaining the various contractors required to complete the inspection. He further requested to return the funds remaining in his trust account to the parties.

At the August 22, 2006 hearing, the Court abated this proceeding and gave the parties until September 22, 2006, to file a motion to reinstate the contempt claims.

4

Plaintiffs filed a motion to reinstate contempt claims on September 20, 2006. Plaintiffs asserted that a newly hired professional engineer inspected the home and found numerous defects which would cost between $195,000 and $230,000 to remedy. Plaintiffs claim the defects render the home unsafe. Additionally, Plaintiffs assert that an inspector found a mold problem which would cost $48,000 to remedy.

As part of the settlement agreement, Plaintiffs were to pay off the note held by ESB. Due to the mold and home defects, Plaintiffs claim they have been unable to comply with the settlement agreement. Because of the home defects, Plaintiffs assert they have been unable to get financing to pay off the note or obtain insurance on the property.

Romero responded asserting he was not responsible for the construction. Plaintiffs were to build the home themselves and Romero was to supervise. Romero argues that according to the settlement, he only had to remedy defective work that was actually performed by him on the home. Alternatively, Romero believes that repairing the home would be an economic waste and Romero should pay Plaintiffs the cost of the land.

Plaintiffs responded with a motion to strike asserting that Romero's claims were untimely and that his response was irrelevant because it dealt with issues already settled and dismissed. Furthermore, Plaintiffs asserted the claims were barred by the settlement agreement.

The Court held a hearing on January 22, 2007. At the hearing, Plaintiffs requested this proceeding be remanded to state court. Defendants requested an opportunity to demonstrate Romero had complied with the settlement agreement.

Congress conferred authority to bankruptcy judges through two sections of title 28 of the United States Code: (1) § 1334 which grants subject matter jurisdiction in cases under or related to title 11 to the district courts; and (2) § 157 which allows district courts to transfer cases under

title 11 or related to cases under title 11 to bankruptcy courts. 28 U.S.C. § 1334(a); 28 U.S.C § 157(a).

There is no question that this Court has jurisdiction over these matters. While Romero was in bankruptcy, the proceeding clearly fell within the scope of this Court's jurisdiction. Recovery on any of the claims asserted herein would affect the liabilities of the estate. However, for purposes of completeness, the Court will briefly examine 28 U.S.C. § 1334(a) and 28 U.S.C. § 157.

Under § 1334(a) district courts have original and exclusive jurisdiction in cases brought under title 11. 28 U.S.C. § 1334(a). District courts also have "original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in or related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). The Supreme Court has noted "related to" bankruptcy proceedings include "(1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2001) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995)). The Fifth Circuit has stated that a matter is related to a case under title 11 if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). Even when there is a possibility a suit may ultimately have no effect on the estate, this possibility is not enough to conclude there would be no *conceivable* effect. *Id*. "Certainty or even likelihood of such an effect is not a requirement." *Arnold*, 278 F.3d at 434 (citing *In re Canion*, 196 F.3d 579, 858 (5th Cir. 1999). The "plaintiffs' claims, however, must affect the estate, not just the debtor." *Wood*, 825 F.2d at 93 (citing *In re Cemetery Dev. Corp.*, 59 B.R. 115, 121 & n.13 (Bankr. M.D. La. 1986)).

6

Once the court has determined a suit is "related to" title 11, subject matter jurisdiction vests with the district courts. Bankruptcy judges then have authority by reference under 28 U.S.C. § 157. Section 157 states that each district court may provide that "proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges." 28 U.S.C. § 157(a). Bankruptcy judges may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." 28 U.S.C. § 157(b).

As stated above, the Court need not address its jurisdiction of this case and whether the matter is core or non-core. For purposes of this order, such matters are irrelevant. When the debtor filed bankruptcy, this suit clearly became "related to" the bankruptcy proceeding. The matter presently before the Court is whether, now that the bankruptcy case has been dismissed, this Court should continue to retain jurisdiction over a proceeding based entirely on state law claims.

Generally, "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (quoting *Freeport-McMoRan, Inc v. K N Energy,Inc.*, 498 U.S. 426, 428 (1991)). If this were not the standard in bankruptcy proceedings, a debtor who was discontented with the activity of his pending adversary proceeding could orchestrate a dismissal of the bankruptcy case and move the proceeding out of federal court.

However, the Fifth Circuit has held that as a general rule, "the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings." *In re Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993) (citing *In re Carraher*, 971 F.2d 327 (9th Cir. 1992)). Notwithstanding this general rule, the Fifth Circuit emphasized that it is not mandatory that the

7

court should automatically dismiss adversary proceedings upon dismissal of the bankruptcy proceeding. "The decision to retain jurisdiction over related proceedings rests within the sound discretion of the bankruptcy court." *Id*. at 1202. *See e.g. Arnold v. Garlock, Inc.*, 278 F.3d 426, 438 (5th Cir. 2001) (the court to which a claim or cause of action related to bankruptcy cases is removed "may remand such claim or cause of action on any equitable ground.").

In *Querner*, the Court analogized adversary and bankruptcy proceedings with cases concerning "the authority of federal district courts to retain pendant state claims after federal claims have been dismissed." *Id.* (citing *Carraher*, 971 F.2d at 328)). In determining whether the court should retain jurisdiction over an adversary proceeding involving state claims when the main bankruptcy case has been closed, the Fifth Circuit applied the four factors the Supreme Court has examined in determining whether a federal court should retain jurisdiction over pendent state claims after the dismissal of federal claims. *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988). These factors are economy, convenience, fairness, and comity. *Id. See also In re Bass*, 171 F.3d 1016, 1025 (5th Cir. 1999) ("[s]imilar to a federal district court's decision regarding the retention of jurisdiction over pendent state claims after federal claims have been dismissed, a bankruptcy court must considered the factors of economy, convenience, fairness, and comity in deciding whether to dismiss or retain jurisdiction over related proceedings.").

In consideration of the dismissal of the bankruptcy case, this Court, therefore, examines these four factors in determining whether it should retain jurisdiction over this proceeding or remand to state court.

At the January 22, 2007 hearing, the Plaintiffs raised new issues regarding the scope of the work for which Romero was responsible. The motion brought by the Plaintiffs at the hearing

8

was styled as a motion for contempt.  However, the Court will treat the motion by its substance rather than by its form.  *See Armstrong v. Capshaw, Goss & Bowers,* 404 F.3d 933 (5th Cir. 2005) (noting district courts must determine the true nature of a pleading by its substance, rather than its labels) (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label'") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963)).  By asserting new issues beyond those settled in the November Order, the Plaintiffs were effectively bringing a new claim against Romero based on breach of contract.  Such issues have been settled.  This Court entered a binding order on November 30, 2005.  Before the November Order was entered, the parties participated in a hearing in which they presented evidence as to the scope of the contract.  The parties consented to the hearing and consented to trying the issues, without a demand for a jury trial.  The findings at the November 30, 2005 hearing, which are incorporated into the November Order, articulated the extent of work for which the parties are liable.  The extent of the parties' liability under the contract has been determined.  To the extent that a new claim is now being asserted, the Court should decline to continue to exercise jurisdiction.  Obviously, there can be no affect on the now-dismissed bankruptcy case.  Moreover, the parties no longer seek to enforce the prior orders of the Court.  Rather, new claims have been brought.  Although this Court's prior orders may serve as evidence with respect to these new claims and may serve to preclude the new claims altogether, that matter is best left to another court.

   This case has been pending before this Court for over two years.  The Court is quite familiar with the parties and their dispute.  However, the issues presented in this case are neither

9

unique nor require complex legal analysis. The issues involve a breach of contract claim and the parties' alleged failure to comply with a court approved settlement agreement.

Since the bankruptcy case has been dismissed, new issues have been presented as to the scope of consequential damages. The parties have not yet addressed these matters to this Court. The bankruptcy case has been dismissed for over nine months. The issues remaining are purely state law causes of action. There is no reason for a state court to defer to the jurisdiction of a bankruptcy court in the determination of these remaining claims. Additionally, since there is no longer a bankruptcy estate, there are no issues as to judicial economy between this case and any bankruptcy proceeding. Although this Court is familiar with the parties, the Court finds that remanding the case will not result in any judicial inefficiency. Therefore, the Court finds the factors of economy and comity to be neutral.

The Court finds the factors of convenience and fairness weigh in favor of remand. The parties should not be forced to litigate a new cause of action based on jurisdiction arising under a previously-dismissed bankruptcy case.

The Fifth Circuit has held that bankruptcy courts should ordinarily not retain jurisdiction over proceedings related to a bankruptcy case once the bankruptcy case has been closed or dismissed. *In re Querner*, 7 F.3d at 1201. The bankruptcy case has been dismissed. The remaining claims are based purely on state law causes of action. An evaluation of the four *Querner* factor favors remand. Accordingly, this proceeding is remanded to the 93rd Judicial District Court of Hidalgo County, Texas.

Signed at Houston, Texas, on February 2, 2007.

MARVIN ISGUR
United States Bankruptcy Judge